UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LC BLACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:16 CV 2145 CDP |
| | ) | |
| PETER O'ROURKE, Acting Secretary, | ) | |
| United States Department of | ) | |
| Veterans Affairs,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff LC Black brings this action under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act, alleging that the Department of Veterans Affairs (VA) unlawfully discriminated against him in his employment on account of his race, color, gender, and age, and in retaliation for earlier complaints of discrimination. The VA moves for summary judgment on Black's claims. I will grant the motion.

## Background

Plaintiff Black is an African American male, born in 1952, who worked for the VA Medical Center at its Jefferson Barracks warehouse facility for about thirty

---

[1] Peter O'Rourke became the Acting Secretary of the Department of Veterans Affairs effective May 29, 2018. Under Fed. R. Civ. P. 25(d), O'Rourke is automatically substituted for former Secretary Shulkin as the defendant in this action.

months before his employment was terminated on September 20, 2014.

Black claims that in February 2014, the VA failed to act when he reported that a coworker broke his finger, and again failed to act in April 2014 when he reported that a volunteer employee attacked him and used a racial slur against him. Believing that the VA's failure to act constituted discrimination and harassment because of his age and race, Black contacted an EEO counselor in May 2014. Mediation on Black's claim of discrimination was held on July 24, 2014, and an agreement was reached that same date.

On July 30, 2014, Kenneth Van Buren, a VA coworker, reported to the VA Police that Black threatened him with a box cutter. The VA placed Black on administrative leave that same date. The VA Police filed a claim with the Office of Inspector General and sought charges against Black for unlawful use of a weapon and conduct unbecoming a federal employee. The OIG rejected both charges. The United States Attorney's Office likewise rejected the case. The VA Police then asked St. Louis County officials to prosecute, and criminal charges were filed. Black was arrested on the charges on August 15, 2014, after which the VA notified Black of his proposed removal from VA employment. On the same date that the VA provided this notice to Black, he filed a formal EEO complaint of discrimination. The VA thereafter terminated Black's employment, effective September 20, 2014.

Black claims that the VA's failure to act in February and April 2014 created a hostile work environment on account of his age and race. He also claims that the VA caused him to be arrested in retaliation for his complaint of discrimination, and ultimately terminated his employment because of his race, age, and in retaliation for his earlier complaints.

In its motion for summary judgment, the VA contends that the evidence fails to show that the conduct Black complains of was on account of any discriminatory animus based on race, age, or protected conduct; and, further, that legitimate, non-discriminatory and non-retaliatory reasons supported any adverse employment action. The VA argues that because Black cannot show these reasons to be pretext for discrimination or retaliation, it is entitled to summary judgment. I agree.

## Summary Judgment Standard

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). I must view the evidence in the light most favorable to the nonmoving party and accord him the benefit of all reasonable inferences. *Scott v. Harris,* 550 U.S. 372, 379 (2007).

Initially, the moving party must demonstrate the absence of an issue for trial.

*Celotex,* 477 U.S. at 323. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in his pleadings or in general denials of the movant's assertions, but must instead come forward with specific facts showing that there is a genuine issue for trial. *Id.* at 324; *Torgerson,* 643 F.3d at 1042.

If the nonmoving party fails to properly address an assertion of fact made by the movant, the Federal Rules of Civil Procedure permit me to consider the fact undisputed. Fed. R. Civ. P. 56(e)(2). The Local Rules of this Court, however, require it. Under Local Rule 4.01(E), moving parties must include a statement of uncontroverted material facts with their memorandum, with citations to the record if the fact(s) are established by the record.

> Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. *All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.*

E.D. Mo. L.R. 4.01(E) (emphasis added). Accordingly, I deem admitted any statement of fact that Black did not specifically controvert in response to the VA's motion.

**Evidence Before the Court on the Motion**

The following recitation of undisputed facts giving rise to Black's claims is taken from the VA's Statement of Uncontroverted Material Facts, Black's response, and my independent review of the record in this case.

Broken Finger, February 2014

On February 2, 2014, coworker Robert Ford helped Black unload pallets from a truck at the VA's Jefferson Barracks warehouse facility, stacking the pallets as they were unloaded. When Ford threw a pallet on top of a stack, it landed on Black's hand and broke his finger. Black believes that Ford had issues with his temper, that management was aware of these issues, and that there was shared concern that Ford's temper may eventually cause injury to someone.

Black reported the incident to his supervisor, Lonnie Crumpton, but Crumpton took no action against Ford. Black does not claim that Ford's conduct itself was discriminatory. Instead, he argues that management's lack of response to Ford's dangerous behavior was on account of his age and race, testifying at his deposition that there could be no other reason. Black was the only African American working in the warehouse at that time, and he was sixty-three years old.

Assault, April 2014

On April 25, 2014, a younger, white volunteer employee at the VA pushed Black against the wall and directed expletives and a racial epithet toward Black.

Black sustained minor injuries to his arm and shoulder as a result. Black called the VA Police, who responded and took statements from Black and the volunteer employee regarding the incident. The police escorted the volunteer employee off the premises and issued him a verbal warning. Perceiving the volunteer employee to have a mental disability, the police issued no citation to him.

Black's direct supervisor, Eddie Irby, and Black's second line supervisor, Crumpton, thereafter contacted the volunteer office and instructed that that employee could no longer work at the warehouse and that all volunteer employees would require direct supervision.

May 2014 Complaint of Discrimination

Black initiated contact with the VA's Office of Resolution Management on May 14, 2014, and claimed that he was being subjected to harassment and a hostile work environment on account of his age and race, citing the February 2014 and April 2014 incidents set out above. Mediation on Black's complaint was held on July 24, 2014, at which it was agreed that the VA would undergo sensitivity training within sixty days.

Arrest and Detention, August 2014

On August 15, 2014, Black arrived at the VA John Cochran Medical Center for a medical appointment. Having previously been placed on administrative leave, Black was required to check in with the VA Police when he entered the

facility to obtain a pass. Upon checking in, Black was placed under arrest by the VA Police on a warrant issued by St. Louis County. The VA Police handcuffed Black and placed him in a small cell, and later transported him to the County. Black was released on bond by St. Louis County that same date.

Black contends that at the time of his arrest and detention, the VA Police were aware of his prior EEO activity.

August 2014 Complaint of Discrimination

On August 18, 2014, Black filed a formal complaint of discrimination with the VA, alleging hostile work environment. As bases for his claim, Black included allegations regarding the VA Police's conduct in his arrest and detention on August 15.

Termination, September 2014

In a letter dated August 18, 2014, Crumpton notified Black that the VA proposed to remove him from VA employment for unlawful use of a weapon and for conduct unbecoming a federal employee. This proposal was made after Human Resources investigated a workplace incident that occurred on July 30, 2014, involving Black and coworker Kenneth Van Buren.

In a letter dated September 10, 2014, Kevin Q. Inkley, Acting Medical Center Director of the VA St. Louis Health Care System, informed Black that he would be removed from employment effective September 20 based on the charges

of unlawful use of a weapon and conduct unbecoming a federal employee. Inkley was the final decision maker in removing Black from VA employment; Crumpton had no involvement in this final decision. In making this decision, Inkley reviewed the evidence file of the July 30 incident, which included police reports, witness statements, and reports of contact from coworkers. Those reports and statements contained the following information:

- The VA Police were contacted during the morning of July 30, 2014, with a report that Black threatened Van Buren with a multi-purpose work tool, saying that he would "cut" Van Buren and that Van Buren would "bleed out" before the police arrived. During the investigation of the matter, VA Police obtained a statement from a witness corroborating the report.

- Later in the morning of July 30, the VA Police located and detained Black and informed him of the report that he allegedly threatened another employee with a knife. When provided with details of the report, Black stated that he was only kidding around and would never intentionally hurt anyone. Black related that he and Van Buren had engaged in a verbal exchange during which Black told Van Buren that if Van Buren's friend tried to kick his ass, he would get cut. Black reduced this statement to writing. In another written statement, Black wrote that in response to Van Buren's remark about the friend, Black stated "I stick my knife in

him and you." Although Black also wrote that he did not pull a knife because he did not have a knife, he made other statements to the VA Police that he had his Leatherman work tool in his hand during the encounter and that the knife blade of the tool could have been extended when he made his statement to Van Buren.

- After the VA Police interviewed Black on July 30, Crumpton placed Black on administrative leave, designating Black's home address as his duty station.

- On July 30, the VA Police referred the matter to the VA-OIG, who rejected the case that same date. The United States Attorney's Office rejected the case on July 31. The case was referred to the St. Louis County Prosecuting Attorney's Office on August 1. On August 5, that office informed the VA Police that it was working on a warrant application.

- On August 14, Inkley ordered Black to remain at his residence during normal work hours until further notice.

- Black appeared at the VA Medical Center on August 15 for an appointment, at which time the VA Police detained him and later delivered him to St. Louis County on a warrant issued by the County. In a statement summarizing this event, Black reported that he was being

subjected to a hostile work environment, that the VA Police
discriminated against him, and that the report on the July 30 incident
contained statements that he did not make.

(ECF #35-20.)  In addition to this written evidence contained in the evidence file,
Inkley also considered an oral statement Black gave in response to his proposed
termination, denying that he engaged in the conduct alleged to have occurred on
July 30.  Inkley determined, however, that the evidence contained in the evidence
file supported the charges as alleged.

Inkley attested that neither Black's race nor age factored into his
determination to terminate Black's employment.  Inkley was aware that Black had
engaged in earlier EEO activity claiming hostile work environment, but he attested
that that did not affect his decision.  Inkley attested that his decision to terminate
Black was specifically based on the July 30 incident.

**Discussion**

As an initial matter, I note that although Black listed "gender" as a basis of
discrimination in his form complaint filed in this action, he made no administrative
claim of gender discrimination and testified at his deposition that his sex did not
contribute to the discrimination he experienced.  It thus appears that Black has
abandoned his claim of gender discrimination.  Even if not, the evidence when
viewed in the light most favorable to Black does not establish a legally cognizable

claim of gender discrimination under Title VII.  *See Comstock v. Consumers*

*Markets, Inc.*, 953 F. Supp. 1096, 1101 (W.D. Mo. 1996) (citing *Callanan v.*

*Runyun*, 75 F.3d 1293, 1297 (8th Cir. 1996) (to maintain Title VII claim of sex

discrimination, employee must establish that conduct was based on sex)).  The VA

is therefore entitled to summary judgment to the extent Black contends he was

subjected to gender discrimination.

     I now turn to Black's remaining claims of discrimination and retaliation.

     Absent direct evidence of discrimination, I must apply the familiar

*McDonnell Douglas*[2] burden-shifting analysis when analyzing Black's claims of

employment discrimination.  *Grant v. City of Blytheville, Ark.*, 841 F.3d 767, 773

(8th Cir. 2016); *Bakhtiari v. Lutz*, 507 F.3d 1132, 1137 (8th Cir. 2007).  Under this

framework, Black must first establish a *prima facie* case of discrimination.  If

Black meets this burden, the burden shifts to the VA to articulate a legitimate, non-

discriminatory reason for the adverse employment action.  If the VA meets this

burden of production, Black must then prove by a preponderance of the evidence

that the legitimate reasons offered by the VA are not its true reasons, but are

pretext for discrimination.  *Grant*, 841 F.3d at 773.  At all times, Black bears the

ultimate burden of proving that he was unlawfully discriminated against.  *Rose-*

*Maston v. NME Hosp., Inc.,* 133 F.3d 1104, 1107-08 (8th Cir. 1998).

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Hostile Work Environment

"Hostile work environment harassment occurs '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 805 (8th Cir. 2013) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (alteration in *Jackman*). To prevail on his claim of hostile work environment based on his age and/or race, Black must show that: 1) he is a member of a protected group; 2) he was subject to unwelcome age- or race-based harassment; 3) the harassment was because of membership in the protected group; and 4) the harassment affected a term, condition, or privilege of employment. *Banks v. Deere*, 829 F.3d 661, 667 (8th Cir. 2016); *Rickard v. Swedish Match N. Am., Inc.*, 773 F.3d 181, 184 (8th Cir. 2014). If any essential element of this *prima facie* case is not supported by specific facts sufficient to raise a genuine issue for trial, I must grant summary judgment to the VA. *Grant*, 841 F.3d at 773.

Here, Black claims that his supervisors' failure to act in response to the conduct giving rise to his injuries in February and April 2014 was on account of his age and race because there could be no other reason. He contends that at the time of the incidents, he was the only African American who worked at the warehouse and he was older – being sixty-three years old. He does not claim that

the incidents themselves, that is, the throwing of the pallet that resulted in his broken finger and the shove by the volunteer employee that injured his arm, were discriminatory.

Black offers only speculation that the VA's failure to act was on account of his race and/or age. To survive a motion for summary judgment, however, Black must substantiate his allegations with sufficient probative evidence that would support a finding in his favor "based on more than mere speculation, conjecture, or fantasy." *Clay v. Credit Bureau Enters., Inc.*, 754 F.3d 535, 539 (8th Cir. 2014) (internal quotation marks and citations omitted). Because Black does not support his allegations with any probative evidence and relies only on speculation to show that the alleged harassment was based on his race and/or age, he has failed to establish a *prima facie* case of hostile work environment. The VA is therefore entitled to summary judgment on the claim. *Id.* at 541.

Even if Black established a *prima facie* case, the VA nevertheless has articulated and presented evidence of legitimate nondiscriminatory reasons for not disciplining the individuals whose actions injured Black, and Black has failed to present any evidence showing that these reasons are pretext for discrimination.

First, with respect to the February 2014 incident involving Black's broken finger, Black himself testified that Ford did not act intentionally to injure him, and Black's supervisor considered the incident to be an accident and thus not requiring

any type of disciplinary action. The undisputed evidence of the accidental nature of the conduct supports the VA's legitimate, nondiscriminatory reason to not take disciplinary action against Ford, and Black offers nothing more than his unsupported speculation to show that this reason is pretext for discrimination.

With respect to the shoving incident in April 2014, VA supervisors understood that the incident happened after Black and the volunteer employee engaged in a verbal back-and-forth and the volunteer became upset. The supervisors considered the volunteer to be mentally disabled and, after responding to the incident, the VA Police likewise perceived the volunteer to have a mental disability. Although the VA Police did not pursue charges against the volunteer, Black's supervisors took what they considered to be appropriate action in the circumstances and instructed Volunteer Services to no longer assign the person to the warehouse. Black offers no evidence to show that the VA Police's consideration of the volunteer employee's mental disability and the supervisors' act in barring the volunteer from the warehouse with no further discipline were pretext for discriminating against Black on account of his age or race.

To the extent Black argues that his arrest on August 15, 2014, was a continuation of the hostile work environment, he again offers only speculation that the VA Police's conduct was based on his age or race. Further, the undisputed evidence shows that the VA Police acted on an active warrant issued by a separate

prosecuting agency when they arrested and detained Black. Black has presented

no evidence to rebut this legitimate, non-discriminatory reason for the VA's

conduct on that date.

Accordingly, Black has failed to offer any evidence that the VA's failure to

take more significant action on the February and April 2014 incidents was based

on his age and/or race. Nor has he offered any evidence that his arrest in August

2014 was effectuated because of age- or race-based animus. He has thus failed to

establish a *prima facie* case of hostile work environment. Further, Black has failed

to provide any evidence that the VA's reasons for its actions were pretext for

discrimination. The VA is therefore entitled to summary judgment on Black's

claims of hostile work environment.

Retaliation / Termination and Arrest

To establish a *prima facie* case of retaliation under Title VII and the ADEA,

Black must show that: 1) he engaged in protected conduct, 2) reasonable

employees would have found the challenged retaliatory action materially adverse,

and 3) the materially adverse action was causally linked to the protected conduct.

*Betz v. Chertoff*, 578 F.3d 929, 937 (8th Cir. 2009); *Weger v. City of Ladue*, 500

F.3d 710, 726 (8th Cir. 2007) (citing *Burlington N. & Santa Fe Ry. Co. v. White*,

548 U.S. 53, 68 (2006)). *See also Gomez-Perez v. Potter*, 553 U.S. 474 (2008)

(ADEA prohibits retaliation against a federal employee who complains of age

discrimination). If Black cannot show a causal link between his protected conduct and the adverse employment action, summary judgment is proper. *Erenberg v. Methodist Hosp.*, 357 F.3d 787, 793 (8th Cir. 2004).

Here, the VA argues, and the undisputed evidence shows, that no causal connection exists between the filing and pendency of Black's EEO complaint(s) and his termination at issue in this case. Regardless, assuming arguendo that Black can establish a *prima facie* case, the VA has nevertheless articulated a legitimate, non-retaliatory reason for Black's termination, and Black has failed to show that this reason is pretext for retaliation.

The undisputed evidence shows that Inkley was the sole decision maker in the VA's decision to terminate Black's employment. The undisputed evidence also shows that, while Inkley was aware of Black's past EEO activity, he nevertheless had before him evidence that Black threatened bodily harm to a coworker while brandishing a tool that was capable of inflicting such threatened harm, and namely, a Leatherman work tool with its knife blade extended. Although Black disputes that the July 30 encounter with Van Buren occurred as reported, my consideration of Black's claim of retaliation is limited to Inkley's decision to terminate Black and the basis upon which Inkley made the decision. *See Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (question is not whether employee's alleged conduct was egregious enough to warrant

dismissal, but rather whether there is any evidence of discriminatory intent in management's decision).

The evidence shows that Inkley had before him Black's own written statements acknowledging his threat to Van Buren that he would "cut" or "stick [his] knife in" him and that he had his Leatherman tool in his hand when he made this threat. Inkley also had before him a police report recounting Black's oral statement that the knife blade of the tool was extended outward during the encounter. Finally, Inkley had before him a police report recounting another witness's statement that Black pulled a knife and threatened to "poke a hole" in Van Buren. Inkley also considered Black's oral statement made to him that the encounter did not occur as reported, but he concluded that the evidence contained in the file showed by a preponderance of the evidence that Black committed the alleged offenses of unlawful use of a weapon and conduct unbecoming a federal employee. An employee's conduct that may result in criminal penalties constitutes a legitimate, non-discriminatory reason for adverse employment action. *See Luciano v. Monfort, Inc.*, 259 F.3d 906, 908-10 (8th Cir. 2001), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (en banc). An employee's prior EEO activity does not insulate him from discipline for disrupting the workplace or violating the employer's rules. *Kiel*, F.3d 169 F.3d at 1136. In light of Inkley's knowledge of Black's reported misconduct and alleged

violations of the law, his determination to terminate Black's employment was supported by a legitimate, non-retaliatory reason.

In arguing that the VA's reason for its action is pretext for retaliation, Black points to the April 2014 incident where the volunteer employee assaulted him while at work and no disciplinary action or charges were brought against that employee. While a plaintiff may show pretext by showing that an employer treated him differently from similarly-situated employees, he must prove that he and the other employee(s) are similarly situated in all relevant respects. *Gibson v. American Greetings Corp.*, 670 F.3d 844, 855 (8th Cir. 2012). Black is unable to meet this rigorous test.

To be similarly situated in all relevant respects, Black and the volunteer employee must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances. *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 956 (8th Cir. 2012). "Furthermore, '[t]o be probative evidence of pretext, the misconduct of more leniently disciplined employees must be of comparable seriousness.'" *Id.* (quoting *Rodgers v. U.S. Bank, N.A.,* 417 F.3d 845, 853 (8th Cir. 2005)) (alteration in *Rodgers*).

With respect to the April 2014 altercation involving the volunteer employee, the VA Police determined not to charge the employee given that he was mentally

disabled, with such disability confirmed by the employee's father. (*See* ECF #35-19.) There is no evidence in the record that Black is likewise mentally disabled. The evidence also shows that the volunteer employee was supervised by Rocky Buchanan with Public Affairs/Volunteer Services when he engaged in the alleged misconduct. (*Id.*) Lonnie Crumpton, Chief of Logistics, was Black's supervisor in July 2014 when Black was alleged to have engaged in misconduct. Because Black and the volunteer employee had different supervisors and differing mitigating circumstances, they cannot be considered similar "in all relevant respects" for purposes of employment decisions. *Bone*, 686 F.3d at 956. In addition, it cannot be said that the volunteer's conduct in shoving Black against a wall is of comparable seriousness to Black threatening to "cut" a coworker and have him "bleed out" while displaying a tool with a blade exposed. Regardless, Inkley was the ultimate decision maker in determining to discharge Black in September 2014 and had no involvement in the April 2014 incident. "When different decision-makers are involved, two decisions are rarely 'similarly situated in all relevant respects.'" *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994).

Black has therefore failed to rebut the VA's legitimate, non-retaliatory reason for terminating his employment.

To the extent Black argues that the VA had him arrested, detained, and transported to St. Louis County on August 15, 2014, in retaliation for his EEO

activity, the undisputed evidence shows that the VA Police acted on an active warrant issued by a separate prosecuting agency when they arrested and detained Black. Black has presented no evidence to rebut this legitimate, non-retaliatory reason for the VA's conduct on that date.

Black has failed to present any evidence showing that the VA's legitimate, non-retaliatory reasons for its adverse actions were merely pretext for retaliation. I will therefore grant the VA summary judgment on Black's claims that he was arrested and ultimately terminated in retaliation for engaging in protected conduct. *Bone*, 686 F.3d at 958.

Race or Age Discrimination / Termination

With respect to Black's claim that he was unlawfully terminated because of his age and/or race, he must show that: 1) he was a member of protected class, 2) he met the VA's legitimate employment expectations, 3) he suffered an adverse employment action, and 4) the circumstances give rise to an inference of discrimination based on age or race. *Grant*, 841 F.3d at 773.

As set out above, regardless of whether Black establishes a *prima facie* case of discriminatory termination, the VA has nevertheless articulated legitimate, non-discriminatory reasons for terminating Black's employment, and Black has not shown that these reasons are pretext for age- or race-based discrimination. I will therefore grant summary judgment to the VA on Black's claim that he was

terminated because of his age or race.

Accordingly, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant's Motion for Summary

Judgment [33] is **GRANTED.**

An appropriate Judgment is entered herewith.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 18th day of June, 2018.